IN THE UNITED STATES DISTRICT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KORRIN OSBORNE,          )
                              )
     Plaintiff,          )
                              )
vs.                      )        CIVIL ACTION 11-00638-KD-N
                              )
TONY PATTERSON, et al.,    )
                              )
     Defendants.      )

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned Magistrate Judge on Defendants' motion for summary judgment (*see,* doc. 30) and Plaintiff's Opposition thereto (doc. 32).  For the reasons stated below, it is recommended that Defendants' motion for summary judgment be **granted** and that Plaintiff's action be **dismissed with prejudice**.

I.      Summary of Factual Allegations.[1]

Plaintiff Korrin Osborne ("Osborne"), an inmate at Holman Correctional Facility, brings this action against Lieutenant Dexter Brown, Sergeant Michael Watson, Correctional Officer Brian Davis, Alabama Department of Corrections ("ALDOC")

---

[1] The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case."  Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 925 n. 3 (11th Cir. 2000)(citations and internal quotation marks omitted).  Nevertheless, for summary judgment purposes, the Court's analysis begins with a description of the facts in the light most favorable to the nonmoving party. *See* McCullough v. Antolini, 559 F.3d 1201, 1202 (11th Cir. 2009).

Commissioner Kim T. Thomas, Homan Correctional Facility Warden Tony Patterson, Sergeant J. Peavy, and a Correctional Officer identified only as "B. Davis.  (Doc. 15 at p. 5, Doc. 15-1 at ¶¶ 4-10).  Osborne asserts claims against these defendants for "violation of Eighth Amendment Cruel and Unusual Punishment/Excessive Force."  (Doc. 15 at p. 5).  Osborne specifically alleges that Lieutenant Dexter Brown, Sergeant Michael Watson, and Correctional Officer Brian Davis together "did attack the plaintiff while in handcuffs for no penalogical interest, by choking, kicking, and punching Plaintiff Osborne leaving mental and physical injuries."  (Doc. 15 at p. 5-6).  Although Osborne only designates Correctional Officer Brian Davis as a defendant on the Court's § 1983 form (doc. 15 at p. 5), he identifies both Correctional Officer Brian Davis and Correctional Officer "B. Davis" as defendants in his attachment to his § 1983 Complaint (doc. 15-1 at ¶¶ 9, 10).  The defendants have identified Osborne's "B. Davis" as Correctional Officer Benjamin Davis.  (Doc. 28 at p. 3).  Osborne asserts claims of excessive force against Sergeant J. Peavy and B. Davis, now identified by the defendants as Benjamin Davis.  (Doc. 15-1 at ¶¶ 30,31).

Osborne's claims against Commissioner Kim T. Thomas and Warden Tony Patterson are predicated solely on the contention that they are "legally responsible for the overall operation of the Department and each institution under its jurisdiction including Holman Correctional Facility."  (Doc. 15-1 at ¶¶ 4-5).

Osborne's claims arise from an incident that occurred on October 9, 2011, when the defendants were conducting a search for contraband.[2]   (Doc. 15-1 at ¶ 12).  Osborne admits that during this search for contraband, he was asked to remove his boxer shorts but, instead of complying, replied: "This is unnecessary; you can't make me do nothing." (Doc. 15-1 at ¶¶ 12, 13).[3]  Osborne asserts that he had asked Sgt. Peavy "to pat me down I have no contraband in my groin area or anus" but "he replied: 'we gone [sic] make you strip."  (Doc. 15-1 at ¶ 13).

Osborne asserts that all the defendants were at his cell door after they had searched the M-64 and M-65 cells.  (Doc. 15-1 at ¶ 14).  Osborne further asserts that:

> Sgt. Peavy asked the Plaintiff to strip butt-naked.  The Plaintiff asked why do I have to strip on a routine cell search.  Defendant Officer B. Davis interrupted and said, "Just let him out and I'll snatch them down . . . [obscenity omitted]", the Plaintiff replied, you need to have a good reason to put your hands on me. . .

---

[2] Lieutenant Dexter Brown, one of the defendants herein, stated that the search at issue began when:

> Sergeant Jonathan Peavy received a phone call from an unidentified woman.  The woman informed Sgt. Peavy that the inmate in cell M-64 had two cell phones and was calling and harassing her.  Sgt. Peavy, Sgt. Michael Watson, Correctional officers Brian Davis and Benjamin Davis strip searched the inmate in cell M-64 and searched his cell.  No contraband was found.  They then strip searched the inmate assigned to cell M-65 and searched his cell. No contraband was found.  After searching cell M-65, they went to the plaintiff's cell, M-63, Korrin Osborne, B/M 239627.

(Brown Aff., Doc. 28 at p. 10).  Osborne does not dispute any of these facts.  He merely characterizes them as "a routine and unscheduled cell search upon no valid information which Alabama State Prison have a shake-down-list."  (Doc. 15-1 at ¶ 12).

[3] According to Osborne, he had removed all his clothing except the boxer shorts and "let the officers in to search my cell [and] no contraband was found in my cell or on the clothes I took off."  (Doc. 15-1 at ¶ 13).

(Doc. 15-1 at ¶ 14).  Obsorne then complains that the defendants escorted him to a

secluded area on the main hall[4] where Lieutenant Dexter Brown arrived and responded to

Osborne's attempt "to explain" by stating "I don't want to hear nothing just strip."  (Doc.

15-1 at ¶¶ 15-16).  Osborne contends that, when he again tried "to explain," Lieutenant

Brown ordered Sgt. Michael Watson and Officer B. Davis "to snatch the boxers off

Plaintiff and attack him."  (Doc. 15-1 at ¶ 17).[5]  Osborne claims that while he was on the

ground, Sgt. Watson maliciously and sadistically spread one of his legs farther than

necessary to conduct the search in an attempt to inflict injury.  (Doc. 15-1 at ¶ 17).[6]

Osborne contends that he again tried to question Lieutenant Brown about the

necessity for this search but Sgt. Watson told Osborne to "Shut the hell up and just walk."

(Doc. 15-1 at ¶ 18).   Osborne asserts that, when Sgt. Watson shoved his hand in his back,

he grabbed Sgt. Watson  "out of fear."  (*Id*.).  Lieutenant Brown asserts that Osborne was

ordered to start walking to the Health Unit to get a medical assessment the defendant and,

---

[4] Lieutenant Brown testified that, following Osborne's refusal to strip at his cell, he was "ordered to cuff up and was cuffed to the rear."  (Doc. 28 at p. 11).  After his cell was searched, Osborne was "escorted to the P and Q side day room."  (*Id*.).  The handcuffs were then moved to the front so that Osborne could remove his boxers to allow a proper strip search.  (*Id*.).  Osborne does not dispute any of these facts.

[5] Lieutenant Brown testified that, after Osborne refused several orders, Sgt. Watson attempted to remove Osborne's boxers  but he resisted and "was taken down by Sgt. Watson, Sgt. Peavy and Officers Brian and Benjamin Davis," at which point his boxers were removed and a "visual check" completed. (*Id*.).   Osborne was then "helped to his feet and allowed to pull his boxers up."  (*Id*.).

[6] Osborne's contention in his § 1983 Complaint is, however, inconsistent in relevant part with the following written statement he gave to the prison officials about the incident:

> While on the ground Sgt. Watson took one of my legs by the foot and spread it as if I was about to get raped; which was very humiliating; my boxer's were already down and again no contraband was found and *since my legs were spread very widely it was clear to see nothing was submerged in my anus*.

(Doc. 28 at p. 21)(emphasis added).

when he refused to comply, Sgt. Watson grasped his arm to escort him but Osborne "swung his arms around striking Sgt. Watson in the shoulder and neck area with the handcuffs." (Doc. 28 at p. 11). Lieutenant Brown contends that Osborne was then "taken down to the floor and the handcuffs were removed and placed to the rear." (*Id.*). Osborne asserts that, after "grabbing" Sgt. Watson, he was attacked by all the defendants "who then choked, punched, and kicked the plaintiff while in handcuffs to bruises was placed on him from his feet to his throat." (Doc. 15-1 at ¶ 18).

The defendants admit that force was used against Osborne while he was handcuffed on October 9, 2011, but deny that such force was beyond what was necessary or that Osborne was ever kicked, chocked or punched. (Doc. 28 at p. 6). Osborne confirms that he was taken to the health care unit, examined by the nurse, and photographed, but claims that he was denied "a full-body-chart" of his alleged injuries. (Doc. 15-1 at ¶ 28 and p.14; pp. 25 and 28; Doc. 28 at p. 22, 35). However, a body-chart was completed by the nurse who examined Osborne and she noted only "superficial abrasions to both lower legs" and no redness. (Doc. 28 at 13). The nurse also noted that Osborne could ambulate without difficulty. (*Id.*)[7] Osborne was later "served with a [sic] 'assault on DOC Official' disciplinary." (Doc. 15-1 at ¶ 20; Doc. 28 at 14).[8] An internal investigation was conducted which resulted in a finding that "the actions taken by the

---

[7] Osborne proffers no evidence in support of his allegation that defendants' attack resulted in "swollen [sic] to the left knee, a swollen right wrist, a very bruised right hip, and small bruises from the Plaintiff Osborne right foot to his upper lip." (Doc. 15-1 at ¶ 30). Nor has he presented any evidence in support of the contention that he "has been taking pain pills for over a week now." (Doc. 15-1 at ¶ 32)

[8] It is undisputed that Osborne was found guilty of this assault following a hearing on October 23, 2011 and sentenced to "45 days Disciplinary Segregation, 45 days Loss of Store, Phone, Visitation." (Doc. 28 at 16).

security staff was the minimum amount of force required to gain compliance to a correctional objective  [and] . . .was determined to be justified." (Doc. 28 at 41-42).

II.    Procedural Aspects of the Case.

 On November 14, 2011, Osborne filed this § 1983 action, alleging that the defendants violated his Eighth and Fourteenth Amendment rights by using excessive force on October 9. 2011 by attacking him "for no reason" while in handcuffs.  (Doc. 1 at pp. 4-6). Osborne seeks compensatory and punitive damages.  (Doc. 15 at p. 7).  In his initial complaint, Osborne indicated that he is suing each of the defendants in both their individual and official capacities.  (Doc. 1-1 at ¶ 11).

Osborne's Amended Complaint filed on December 13, 2011 (doc. 15) omits reference to the Fourteenth Amendment (*cf.*, doc. 1 at 4-6 with doc. 15 at 4-6) except in one location wherein he asserts that:

> Defendant "Sgt. Peavy" violated the Plaintiff Osborne Due Process "Fourteenth Amendment" by forcing the plaintiff to strip butt naked when it was only a routine cell search.

(Doc. 15-1 at ¶ 31).  Osborne did not assert that claim against any other defendant in his Amended Complaint and, because it is identical to the corresponding paragraph in his initial Complaint (doc. 1-1 at ¶ 32) from which he otherwise removed the Fourteenth Amendment claim (doc. 1 at 4-6), the inclusion of this reference to the Fourteenth Amendment in the Amended Complaint appears simply inadvertent.[9]  In addition,

---

[9] In any event, because Osborne is a convicted prisoner, his claims are only cognizable under the Eighth Amendment and not under the Fourteenth Amendment.  The Supreme Court explained the distinction as follows:

> Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be "cruel and unusual"

(Continued)

6

Osborne does not state in his Amended Complaint in what capacity he is suing the defendants.[10]

In the Special Report and Answer filed on behalf of Defendants Dexter Brown, Michael Watson, Brian Davis, Tony Patterson, Jonathan Peavy and Kim Thomas on June 1, 2012, Defendants deny Osborne's allegations and assert various defenses, including absolute and qualified immunity. (Docs. 28, 29).[11]  Defendants deny the use of excessive force against Osborne and maintain, to the contrary, that only reasonable force was used against Osborne while he was handcuffed "to maintain and restore discipline at the prison facility and not for malicious or sadistic purposes."  (Doc. 28 at p. 6).  Defendants also assert that, in addition to the photographs that were taken, the nurse in the health clinic

---

under the Eighth Amendment. The Court recognized this distinction in Ingraham v. Wright, 430 U.S. 651, 671-672, n. 40, 97 S.Ct. 1401, 1412-1413 n. 40, 51 L.Ed.2d 711 (1977):"Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. *See* United States v. Lovett, 328 U.S. 303, 317-318, 66 S.Ct. 1073, 1079-1080, 90 L.Ed. 1252 (1946). . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment."

Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979).  *See also.* Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996)(" Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.").

[10] Since Osborne has not made it clear that he is still suing the defendants in both their official and individual capacities, the Court will look at defendants' liability in both their individual and official capacities.

[11] In their Answer, the defendants specifically assert the following: 1) they deny Osborne's allegations; 2) they deny that any of Osborne's constitutional rights were violated; 3) they assert the affirmative defense that any force used against Osborne was used to maintain order and restore discipline at the prison facility and not maliciously or sadistically to cause Osborne harm, and 4) they assert the affirmative defenses of sovereign and qualified immunity.  (Doc. 29 at p. 1-2).

completed a body chart immediately following the incident. (Doc. 28 at p. 6). The nurse noted only the appearance of superficial abrasions and no pain. (*Id.*) Defendants further assert "any injuries allegedly suffered by Inmate Osborne in the days following October 9, 2011 could have been caused [by] Inmate Osborne himself or the other inmates." (*Id*.)

On June 19, 2012, the Court ordered that Defendants' Special Report and Answer be treated as a motion for summary judgment. (Doc. 30). On July 2, 2012, Osborne filed his response in opposition (doc. 32) to defendants' motion for summary judgment contending simply that there are disputed facts concerning the extent of his injuries and, therefore, whether the amount of force used against him on October 9, 2011, was excessive. (Doc. 32 at 1).

III.  Summary Judgment Standard.

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

All of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1280 (11th Cir. 2004). However, Rule 56(e) states that:

> When a motion for summary judgment is properly made and
> supported, an opposing party may not rely merely on allegations or
> denials in its own pleading; rather, its response must--by affidavits
> or as otherwise provided in this rule--set out specific facts showing
> a genuine issue for trial. If the opposing party does not so respond,
> summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

"[T]here is no issue for trial unless there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely

colorable, . . . or is not significantly probative, . . . summary judgment may be granted."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations

omitted). "Summary judgment is mandated where a party 'fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial.'" Custom Mfg. & Eng'g, Inc. v.

Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007), citing Johnson v. Bd. Of

Regents, 263 F.3d 1234, 1243 (11th Cir. 2001). See also Smith v. Naples Community

Hosp., Inc., 433 Fed.Appx. 797, 799 (11th Cir. July 7, 2011)( "Speculation does not create

a genuine issue of fact.")

IV.    Discussion.

A.    Immunity.

As state officials, Defendants are entitled to absolute immunity from suit for

damages in their official capacities. See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1278

(11th Cir. 1998) (state officials sued in their official capacities are protected from suit for

damages under the Eleventh Amendment).  In addition, "[q]ualified immunity protects

government officials performing discretionary functions from suits in their individual

capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003), *quoting* Hope v. Pelzer, 536 U.S. 730, 739 (2002).  In this case, however, qualified immunity is not available with respect to Osborne's claim of excessive force.  The Eleventh Circuit has held that:

> In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution by the Supreme Court decisions in Hudson and Whitley. *See* Johnson v. Breeden, 280 F.3d 1308 (11th Cir. 2002). There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. *Id*. The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment. If he has done so, that is the end of the inquiry.

Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002), *citing* Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), and Whitley v. Albers, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).   Because Osborne alleges such a violation, the only question remaining is whether he has alleged facts against each Defendant sufficient to survive the motion for summary judgment. *See* Skrtich, 280 F.3d at 1301;  *see also* Spencer v. Williams , 2012 WL 685299, *3 n. 4 (S.D. Ala. Jan. 30, 2012)(same).

B.    Respondeat Superior Liability.

Osborne has asserted no direct claims against Warden Tony Patterson or against Commissioner Kim Thomas. Section 1983 requires "proof of an affirmative causal connection between the actions taken by a defendant and the alleged constitutional deprivation." Griggs v. Boyd,  2012 WL 1058992, * 7 (M.D. Ala. Feb. 29, 2012), *citing*

Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995); *see also* Dean v.
Barber, 951 F.2d 1210, 1215 (11th Cir. 1992).  These defendants cannot be held liable
under § 1983 for the actions of their subordinates under a theory of *respondeat superior*.
Monell v. Department of Social Services, 436 U.S. 658, 691 (1978); Cook ex rel. Estate
of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1116 (11th Cir. 2005).
Liability may only be imposed if Osborne shows that these defendants either personally
participated in the alleged constitutional violation or instigated or adopted a policy that
violated Osborne's constitutional rights. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir.
2003) (a supervisory official is held liable only if he "personally participate[d] in the
alleged unconstitutional conduct or [if] there is a causal connection between [his] actions
... and the alleged constitutional deprivation.").  Osborne has failed to make the requisite
showing.  Accordingly, to the extent Osborne names Warden Patterson and
Commissioner Thomas as defendants in this action, he is entitled to no relief and
summary judgment should be entered in their favor.

    C.  Eighth Amendment Excessive Force Claim.

    Osborne seeks redress pursuant to 42 U.S.C. § 1983 for alleged constitutional
deprivations arising out of an incident that occurred on October 9, 2011, while Osborne
was incarcerated in the segregation unit at Holman Correctional Facility. Section 1983
provides in pertinent part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party

11

> injured in an action at law, suit in equity, or other proper
> proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

The Eighth Amendment protects a prisoner from punishment that is cruel and unusual. Graham v. Connor, 490 U.S. 386, 394 (1989). Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, . . . the infliction of pain totally without penological justification. . . , [and] the infliction of punishment grossly disproportionate to the severity of the offense." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987), *citing* Rhodes v. Chapman, 452 U.S. 337, 346 (1981).

In considering an Eighth Amendment excessive force claim, the court must consider both a subjective and objective component: (1) whether the "officials act[ed] with a sufficiently culpable state of mind," and (2) "if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (internal quotations omitted). Under the subjective component, force is considered legitimate in a custodial setting only so long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically for the very purpose of causing harm." Skrtich, 280 F.3d at 1300 (citation omitted). In making this determination, the court looks at the following factors: (1) the need for the application of force, (2) the relationship between that need and the amount of force used, (3) the extent of the prisoner's injuries, (4) the threat reasonably perceived by the officials on the basis of the facts known to them, and (5) efforts made to temper the severity of the force. Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir.2007). A "wide range of deference [is given] to prison officials acting to

12

preserve discipline and security, including when considering decisions made at the scene of a disturbance." Id. (citation omitted)  Under the objective component, the court looks to whether the alleged wrongdoing was "objectively harmful enough to establish a constitutional violation." Hudson, 503 U.S. at 8, 112 S.Ct. at 999.   Moreover, Eighth Amendment claims based on de minimis uses of physical force by prison guards are not cognizable unless they involve force that is "repugnant to the conscience of mankind." Id. at 9–10, 112 S.Ct. at 1000.  *See also* Boxer v. Harris, 437 F.3d 1107, 1111 (11th Cir.2006) ("[A]n injury can be 'objectively, sufficiently serious' [to constitute a constitutional violation] only if there is more than de minimus injury.")

Osborne must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, and, second, he must show that "the officials act[ed] with a sufficiently culpable state of mind," i.e., that they acted "maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-8.  In the prison security context, the factors used to determine whether there has been a violation of the Eighth Amendment are: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts to temper the severity of a forceful response, and the extent of injury suffered. Id. at 7, *citing* Whitley v. Albers, 475 U.S. 312, 321 (1986).  The question is whether, under the circumstances of this case, a jury could reasonably conclude that Osborne's constitutional rights under the Eighth Amendment were violated during the incident that occurred on October 9, 2011.  For the reasons articulated herein, the undersigned finds that Osborne's claims fail to state a constitutional violation.

13

With respect to all the defendants, Osborne has alleged, in a separate attached document identified as "Exhibit I" that is a handwritten excerpt from an undated and otherwise unidentified document, as follows:

> I was then taken to get a body chart; which was cut-off after the nurse the [sic] did my vital-signs and temperature; I never got a chance to get a full-body-chart till 10-11-11 after going 2 days in pain and signing for sick call. Sgt. Watson took a photo shoot of my face but no where I had injuries or was bleeding at; which should have been included in the body-chart and the camera photos.

(Doc. 15 at 18, *citing* Doc. 15-1 at 23).[12]  This statement does not sufficiently describe the injuries which Osborne now contends he suffered as a result of the incident and fails to describe the location of the bleeding he contends was purposefully avoided in the photographs proffered into evidence by the defendants (doc. 28 at 51-53).   Although Osborne claims to have suffered pain, he has not alleged any specific injury actually requiring any medical treatment, such as a laceration requiring stitches or an orthopedic injury requiring immobilization. Osborne has, therefore, failed to establish that the force used by the defendants to obtain Osborne's compliance with their search for contraband and their orders to proceed to the health care unit was objectively "harmful enough" to establish a constitutional violation as required under the principals set forth in  Hudson, 503 U.S. at 6-8.

With respect to the requisite "subjective component," Osborne relies on an alleged statement made "B. Davis" that one or more of the other defendants should "[j]ust let him

---

[12]  Although not identified by Osborne in his pleadings, this excerpt is taken from the written statement he prepared and submitted at his prison disciplinary hearing on October 23, 2011.  (Doc. 28 at 18-25).

out and I'll snatch them down [obscenity omitted] it."  (Doc. 15-1 at ¶ 14).  Even if

accepted as true, that comment alone is insufficient to indicate that the motive of "B.

Davis," or the motives of any of the other officers, in using force against Osborne was

anything other than a good faith effort to gain compliance of an inmate who was refusing

a direct order to strip so that he could be searched for contraband.[13]

Osborne further relies on the contention that "Sgt. M. Watson" spread one of

Osborne's legs "so far unnecessarily to inflict injury and not seek contraband that was

clear and convincing the Plaintiff didn't have [and] this was done sadistically and

maliciously and not to restore prison discipline."  (Doc. 15-1 at ¶ 17).   Osborne does not

contend that he actually suffered any physical injury from this effort to search his body

for contraband.  Nor can it be said that this conduct was either "unnecessary" to

accomplish the search in question or "not to restore prison discipline" when Osborne

admits that he refused to comply with the direct order to remove his boxer shorts.

Osborne has, therefore, failed to establish that defendants' alleged conduct constituted

either an "unnecessary and wanton infliction of pain, . . . the infliction of pain totally

without penological justification. . . ," or a "punishment grossly disproportionate to the

severity of the offense." *See,* Ort , 813 F.2d at 321, *citing* Rhodes, 452 U.S. at 346.

The propriety of strip searches on convicted prisoners was analyzed in Bailey v.

Hughes, 815 F.Supp.2d 1246 (M.D. Ala. 2011), as follows:

---

[13] *See* Doc. 15-1 at ¶ 16 : Osborne asserts that while he was "trying to explain" his
noncompliance, Lieutenant Dexter Brown "ordered Sgt. Michael Watson and officer B. Davis to snatch
the boxer's off."

In a case holding that body-cavity searches of inmates were constitutional the Supreme Court also held that jailers and corrections officials should be "accorded wide deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 558, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

The Bell Court held that, to determine whether a given inmate search, particularly a strip-search, was reasonable and therefore constitutional, a court must balance "the need for the particular search against the invasion of personal rights that the search entails," considering "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. at 559, 99 S.Ct. 1861. The Court also noted "[a] detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common." Id. In light of this pronouncement, it is worth noting that Bailey alleges all of the search-related incidents in his complaint were undertaken as part of a contraband search. Doc. # 1 at 10.

The Eleventh Circuit explicitly adopted Bell's holding in Powell v. Barrett. In Powell, the Eleventh Circuit, sitting en banc, held that a strip search of five inmates, crowded with others into a group shower and searched in front of one another without reasonable suspicion that these particular inmates were concealing contraband, was constitutional under Bell, and that, indeed, the circumstances of these searches was less intrusive than those at issue in Bell. Powell v. Barrett, 541 F.3d 1298, 1301–02, 1313 (11th Cir.2008) (noting that the Supreme Court upheld visual body-cavity inspections in Bell, as compared to the visual "front and back" inspection employed in Powell ).

The factual allegations in the complaint do not indicate that the search Bailey was subjected to was any more intrusive or abusive than those conducted in Bell or Powell. Bailey alleges that he was told "to stand in spread his butt-cheeks while in front of the other cellmates. Moon then made Bailey squat and cough in an inappropriate way in front of the other inmates." Doc. # 1 at 11, ¶ 4.

By comparison, the procedure held Constitutional in Bell involved a policy requiring that a male inmate "lift his genitals and bend over to spread his buttocks for visual inspection." Bell, 441 U.S. at 558, n. 39, 99 S.Ct. 1861.

16

815 F.Supp.2d at 1265-1267.  As applied in this case, the strip search was warranted and was conducted in a manner that was no more intrusive or abusive than those conducted in Bell, Powell or Bailey.  Moreover, the undersigned finds that the force used by the defendant officers against Osborne to conduct the search was not excessive.

     1.    Lieutenant Dexter Brown

Osborne contends that on October 9, 2011, Lieutenant Brown refused to listen to his explanations regarding why a strip search was unnecessary and ordered two of the correctional officers, namely Sgt. Michael Watson and Officer "B. Davis," to remove Osborne's boxers "and attack him."  (Doc. 15-1 at ¶ 16).  Osborne further contends that Lieutenant Brown was among the five defendants who collectively "choked, punched, and kicked him."  (Doc. 15-1 at ¶ 18).

Osborne contends there was no justification for the strip search conducted on October 9, 2011, but he has not disputed or contradicted defendants' evidence that the search for contraband occurred as a result of a complaint from an unidentified woman that the inmate in cell M-64 had two cell phones and was calling and harassing her. (Brown Aff., Doc. 28 at p. 10).  Osborne also admits that he refused an order to remove his boxers for the strip search and that he said to the officers in response: "This is unnecessary; you can't make me do nothing."  (Doc. 15-1 at ¶¶ 12, 13).  Osborne repetitively contends that he simply tried "to explain" something to Lieutenant Brown, but the only topic of conversation identified by Osborne in his pleadings is his contention that Lieutenant Brown and the other defendants had no right to search him or touch him. (Doc. 15-1 at ¶¶ 16, 18).   Osborne contends that the beating he received while

handcuffed which was participated in by Lieutenant Brown resulted in bruises "from his feet to his throat."  (Doc. 15-1 at ¶ 18).

Turning the Eighth Amendment factors discussed above, the Court first considers the threat reasonably perceived by Lieutenant Brown and the need for application of force.  The evidence shows that a complaint was lodged with the prison officials about an inmate was making harassing phone calls, which precipitated the search for contraband, namely the cell phone at issue.[14]  The search conducted of the inmates and their cells located next to Osborne's produced no contraband.  The search of Osborne's cell also produced no contraband.  Osborne then refused to comply with an order to remove his boxers for a strip search.  Osborne's contention that he advised Sgt. Peavy that "I have no contraband in my groin or anus"  (doc. 15-1 at ¶ 13), demonstrates that Osborne acknowledges that it is not unusual, or unheard of, for an inmate to hide contraband in such bodily locations.  Osborne's refusal to comply with a legitimate order to remove his boxers and permit a strip search justified the application of force used to accomplish the search.   The evidence also establishes that the amount of force used in this case was appropriate given Osborne's repeated refusal to comply.  The evidence also establishes

---

[14] *See e.g.,* U.S. v. Blake, 288 Fed.Appx. 791, 794 (3rd Cir. Aug. 11, 2008)("[T]he risks presented when inmates possess cell phones . . .are patent [, for example] 'someone with a cell phone could notify someone on the outside when they're traveling ... [t]hey could intimidate witnesses, they could, if there is a particular employee they don't like, they could try to send someone after that employee'."); Vasquez v. Shartle, 2011 WL 1004934, *1 (N.D. Ohio March 18, 2011) ("Petitioner was advised that cell phones were characterized as hazardous tools because they could be used to arrange a rendezvous for an escape or the introduction of contraband, or allow prisoners to contact outside individuals with the intent to conduct illegal activities [and] cell phones were considered a threat to the security and orderly running of the institution.").

that the only injury received by Osborne was "superficial abrasions to both lower legs." (Doc. 28 at p. 13).  There is no evidence to substantiate Osborne's contention that he was choked, punched or kicked.  The body chart and photographs taken in the Health Care unit immediately following the incident reflect no sign of injury caused by choking, punching or kicking, whether in the form of marks, scratches, redness, bruising, or any other symptom of injury related to such conduct.  (Doc. 28 at p. 13).

It is also undisputed that Lieutenant Brown did not instigate the altercation with Osborne.  To the contrary, the incident was caused by Osborne's admitted failure to comply with the order to remove his boxers for a legitimate strip search for contraband. Even when viewed in a light most favorable to Osborne, the evidence simply does not support Osborne's claim that Lieutenant Brown, totally without penological justification, maliciously and sadistically attacked him for the very purpose of causing harm.

Under the circumstances of this case, the undersigned finds that the force used by Lieutenant Brown during the search for contraband conducted on October 9, 2011, was reasonable in light of the fact that it was initiated to find contraband and in a correctional facility and was not done in violation of Osborne's constitutional rights.  Thus, Osborne's Eighth Amendment excessive force claim against Lieutenant Brown fails as a matter of law and Defendants' motion for summary judgment on this claim is due to be granted.

2. <u>Sergeant Michael Watson</u>

Osborne contends that on October 9, 2011, Sgt. Michael Watson was ordered to remove Osborne's boxers and, while he was handcuffed and on the ground, Sgt. Watson spread his legs apart "so far unnecessarily to inflict injury."  (Doc. 15-1 at ¶¶ 16, 17, 28).

19

Osborne has not alleged any specific injury resulting from the sergeant's actions. Moreover, this allegation is, in part, inconsistent with the report Osborne gave to the prison officials concerning this incident.   In his handwritten summary of the incident Osborne claimed no injury, apart from humiliation, and simultaneously acknowledged that the spreading of his legs enabled the defendants "to clear[ly] see nothing was submerged in my anus."  (Doc. 28 at p. 21).   The search conducted on Osborne "was reasonable in light of the fact that it was initiated to find contraband, in a correctional facility, and conducted in a manner consistent with case law on constitutional searches.". Bailey, 815 S.Supp.2d at 1267.

Osborne further contends that Sgt. Watson was among the five defendants who collectively "choked, punched, and kicked him."  (Doc. 15-1 at ¶ 18, 28).  For the reasons stated above with respect to Lieutenant Brown, there is no evidence to substantiate Osborne's contention that he was choked, punched or kicked by Sgt. Watson and Osborne's refusal to comply with a legitimate order to remove his boxers and permit a strip search justified the application of force used to accomplish the search.   The altercation with Osborne was caused by Osborne's failure to comply with the order to remove his boxers for a legitimate strip search for contraband.  Even when viewed in a light most favorable to Osborne, the evidence simply does not support Osborne's claim that Sgt. Watson, totally without penological justification, maliciously and sadistically attacked him for the very purpose of causing harm.  Accordingly, the undersigned finds that the force used by Sgt. Watson during the search for contraband conducted on October 9, 2011, was not constitutionally excessive.  Therefore, Osborne's Eighth

20

Amendment excessive force claim against Sgt. Watson fails as a matter of law and Defendants' motion for summary judgment on this claim is due to be granted.

       3.    <u>Correctional Officer Brian Davis</u>.

Osborne contends that on October 9, 2011, Officer Brian Davis was ordered to remove Osborne's boxers and to attack him. (Doc. 15-1 at ¶16). Osborne further contends that Officer Brian Davis choked him while he was handcuffed "till the point he nearly blacked out and where almost a week later [he] had problems swallowing and raising his voice because it caused pain." (Doc. 15-1 at ¶ 29). Osborne argues that this force was unnecessary because he "wasn't acting disruptively or violating any prison rules." (Doc. 15-1 at ¶ 29). This contention is, however, contrary to Osborne's assertion that he was not "choked" until after he had "grabbed" Sgt. Watson when Sgt. Watson put his hand on Osborne's back to escort him to the health unit. (Doc. 15-1 at ¶18).

For the reasons stated above with respect to Lieutenant Brown and Sgt. Watson, there is no evidence to substantiate Osborne's contention that he was choked, punched or kicked by Officer Brian Davis and Osborne's assault of Sgt. Watson when he attempted to escort Osborne to the health care unit. Osborne's refusal to comply with a legitimate order to remove his boxers and permit a strip search justified the application of force used to accomplish the search. Under the circumstances of this case, the undersigned finds that the force used by Officer Brian Davis during the search for contraband was not constitutionally excessive. Therefore, Osborne's Eighth Amendment excessive force claim against Officer Brian Davis fails as a matter of law and Defendants' motion for summary judgment on this claim is due to be granted.

4.      Correctional Officer Benjamin Davis.

This defendant is identified by Osborne only as Officer B. Davis.  Osborne

maintains that Officer B. Davis was ordered to remove Osborne's boxers and to attack

him.  (Doc. 15-1 at ¶16).  Osborne further contends that Officer B. Davis kicked and

punched him while he was handcuffed "leaving injuries that caused swellen [sic] to the

left knee, a swollen right wrist, a very bruised right hip, and small bruises from [his] right

foot to his upper lip."  (Doc. 15-1 at ¶ 30).  Osborne argues that this force was

unnecessary because "[a]t neither time was the Plaintiff acting disruptively or violating

any prison rules."  (Doc. 15-1 at ¶ 30).  Use of the phrase "neither time" indicates that

Osborne is referring to the two separate times he was taken to the floor by the defendants.

The first time involved the removal of Osborne's boxers by the defendants after he

refused to comply with the order to remove them.  The second time occurred after his

assault on Sgt. Watson when Sgt. Watson was attempting to escort him to the health unit.

On both occasions, Osborne essentially acknowledges that he did not comply with the

defendants' orders.  To the extent he claims to have been injured by Officer B. Davis

during the second time he was taken to the floor, his contention that he was not acting

disruptively contrary to his assertion that he was not "kicked or punched" by Officer B.

Davis until after he had "grabbed" Sgt. Watson when Sgt. Watson put his hand on

Osborne's back to escort him to the health unit.  (Doc. 15-1 at ¶18).

For the reasons stated above with respect to Lieutenant Brown, Sgt. Watson and

Officer Brian Davis, there is no evidence to substantiate Osborne's contention that he was

punched or kicked by Officer B. Davis.  In addition, Osborne's assault of Sgt. Watson

when he attempted to escort Osborne to the health care unit and Osborne's refusal to comply with a legitimate order to remove his boxers and permit a strip search justified the application of force used to accomplish the search.   Like Lieutenant Brown, Sgt. Watson, and Officer Brian David, Officer Benjamin Davis did not instigate the altercation with Osborne.  It was, instead, caused solely by Osborne's failure to comply with the order to remove his boxers for a legitimate strip search for contraband and his assault of Sgt. Watson.  Even when viewed in a light most favorable to Osborne, the evidence simply does not support Osborne's claim that Officer Benjamin Davis, totally without penological justification, maliciously and sadistically attacked him for the very purpose of causing harm.

Accordingly, the undersigned finds that under the circumstances of this case, the force used by Officer Benjamin Davis during the search for contraband conducted on October 9, 2011, was not constitutionally excessive.  Therefore, Osborne's Eighth Amendment excessive force claim against Officer Benjamin Davis fails as a matter of law and Defendants' motion for summary judgment on this claim is due to be granted.

5.   Sergeant Jonathan Peavy.

This defendant is identified by Osborne only as Sgt. J. Peavy.  Osborne contends that Sgt. J. Peavy violated Osborne's Due Process Fourteenth Amendment rights by "forcing [him] to strip butt naked when it was only a routine cell search then by using excessive force against [him] by kicking and punching him when [he] was not violating

any prison rules or acting disruptively." (Doc. 15-1 at ¶ 31)[15].  Osborne argues that this force was unnecessary because "[a]t neither time was the Plaintiff acting disruptively or violating any prison rules."  (Doc. 15-1 at ¶ 30).

Osborne contends there was no justification for the strip search conducted on October 9, 2011, but he has not disputed or contradicted defendants' evidence that the search for contraband occurred as a result of a complaint from an unidentified woman that the inmate in cell M-64 had two cell phones and was calling and harassing her. (Brown Aff., Doc. 28 at p. 10).  Osborne also admits that he refused an order to remove his boxers for the strip search and that he said to the officers in response: "This is unnecessary; you can't make me do nothing."  (Doc. 15-1 at ¶¶ 12, 13).

For the reasons stated above with respect to Lieutenant Brown, Sgt. Watson and Officers Brian and Benjamin Davis, there is no evidence to substantiate Osborne's contention that he was punched or kicked by Sgt. J. Peavy.  In addition, Osborne's assault of Sgt. Watson when he attempted to escort Osborne to the health care unit and Osborne's refusal to comply with a legitimate order to remove his boxers and permit a strip search justified the application of force used to accomplish the search.   Like Lieutenant Brown, Sgt. Watson, and Officers Brian  and Benjamin Davis, Sgt. Jonathan

---

[15] Because Osborne is a convicted prisoner, his claims are only cognizable under the Eighth Amendment and not under the Fourteenth Amendment. *See e.g.* <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1490 (11th Cir. 1996)(" Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners."). To the extent Osborne alleges such claims, they are due to be dismissed.  *See ftnt 10, supra.*

Peavy did not instigate the altercation with Osborne.  It was, instead, caused solely by Osborne's failure to comply with the order to remove his boxers for a legitimate strip search for contraband and his assault of Sgt. Watson.  Even when viewed in a light most favorable to Osborne, the evidence simply does not support Osborne's claim that Sgt. Jonathan Peavy, totally without penological justification, maliciously and sadistically attacked him for the very purpose of causing harm.

Under the circumstances of this case, the undersigned finds that the force used by Sgt. Jonathan Peavy during the search for contraband conducted on October 9, 2011, was not constitutionally excessive.  Therefore, Osborne's Eighth Amendment excessive force claim against Sgt. Jonathan Peavy fails as a matter of law and Defendants' motion for summary judgment on this claim is due to be granted.

V.   Conclusion.

Based on the foregoing, the undersigned concludes that Defendants are entitled to summary judgment in their favor on all claims asserted against them by plaintiff Korrin Osborne.  It is therefore the recommendation of the undersigned that Defendants' motion for summary judgment be **GRANTED** and that Osborne's Complaint be **DISMISSED with prejudice**.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this  22nd  day of February, 2013.

/s/ Katherine P. Nelson
**UNITED STATES MAGISTRATE JUDGE**

25

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.    ***Objection***.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. §636(b)(1)(C); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988); <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. §636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[16] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. §1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

   **DONE** this   22nd   day of February, 2013.

/s/ Katherine P. Nelson
**UNITED STATES MAGISTRATE JUDGE**

---

[16] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  <u>Fed. R. Civ. P.</u> 72(b)(2).

26