IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KORRIN OSBORNE,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| vs.   ) | CIVIL ACTION 11-00638-KD-N |
| ) | |
| TONY PATTERSON, et al.,   ) | |
| ) | |
| Defendants.   ) | |

**ORDER**

This action is before the Court upon *in camera* review of plaintiff Korrin Osborne's medical records from October 1, 2011 through March 1, 2012 (doc. 45), the answer and special report which were converted into defendants' motion for summary judgment (docs. 28, 29), plaintiff's response (doc. 32), the report and recommendation (doc. 36), and this Court's order adopting in part the report and recommendation (doc. 39). Upon consideration and for the reasons set forth herein, defendants' motion for summary judgment is GRANTED in favor of the remaining defendants Dexter Brown, Michael Watson, Brian Davis, Benjamin Davis, and Jonathan Peavy. Accordingly, the evidentiary hearing scheduled for October 16, 2013 is CANCELLED, the motions to stay the hearing (docs. 57, 69) are MOOT, and the motion to preclude Osborne from calling witnesses at the evidentiary hearing (DOC. 71) is MOOT.[1]

Previously, the Court denied the motion for summary judgment as to defendants Dexter Brown, Michael Watson, Brian Davis, and Jonathan Peavy. The Court explained that viewing the evidence and factual inferences in the light most favorable to Osborne as the non-movant, there were potential issues of fact that required an evidentiary hearing as to whether 1) Osborne

---

[1] The motion to dismiss Benjamin Davis who works at Fountain Correctional Facility and has never been assigned to Holman Correctional Facility (Doc. 56) is GRANTED.

was kicked, punched, and choked by defendants Brown, Watson, Davis and Peavy, and 2) whether Osborne sustained more than a de minimis injury. (Doc. 39)  At that time, defendants had provided the Court with a copy of the Body Chart Documentation dated October 9, 2011 and photographs taken at the time of the incident. (Doc. 28, p. 13, 51-52)  The Court ordered the defendants to produce, under seal, Osborne's medical records from October 1, 2011 through March 1, 2012 and set an evidentiary hearing for June 2013.  Later, the evidentiary hearing was rescheduled for October 16, 2013.

In preparation for the hearing, the Court has now conducted a thorough review of Osborne's medical records.  The medical records relevant to the incident at issue show that on October 9, 2011, the day of the incident, Osborne was taken to the Health Care Unit and the nurse completed the Body Chart Documentation.  On physical examination, the nurse recorded:

> A+ O x 3  Resp[iration] even unlabored. Skin warm/dry to touch  [No] distress noted.  Denies pain. Multiple superficial abrasions noted to both lower legs. [No] redness noted. Ambulate [without] difficulty.

(Doc.45-1, p. 70)

The next day, October 10, 2011, Osborne requested medical services explaining as follows:

> My whole body is in pain.  My hip is st ___ing.  My throat is hurting, can't swallow or talk to loud.  My leg is swollen a little, can't bend it completely and I have bruises from my feet to inside my mouth.  And my right hand nerves are injured. (*sic*)

(Doc. 45-1, p. 67)

On October 11, 2011, Osborne complained of pain that "comes and goes" in his right hand, right hip and left knee.  The examining nurse noted that Osborne's gait and range of motion were not within normal limits and that he had tenderness, pain with movement, and tingling but without identifying which part of the body was affected. (Doc. 45-1, p. 68)  The

2

nurse found that Osborne's right hand had a "bluish" discoloration with swelling, weakness, and numbness. (*Id.*)

Additional comments were made as follows:

Swelling noted @ right hand [with] scratch, and scratch noted @ lt. hand. Swelling noted @ lt. kneecap, with swelling @ rt. Hip. Limping noted @ rt. Side. Able to close right hand midway, and able to close lt. hand completely. Radical pulse present in both hands+. Abrasion noted @ big toe on rt. Foot. [Patient] stated I have not ate since Sunday and I will not eat until I talk with my mother. The [Lieutenant] reported [patient] had eaten today, and he_____.

(Doc. 45-1, p. 69) The nurse's notes also indicate that Osborne was given "Ibuprofen 200 mg 1 tab 2-3 times/day for 5 days" and that the injury was immobilized with an elastic bandage. (Id.)[2] On October 12, 2011, x-rays were taken of Osborne's right hand, right hip and left knee. [3] (Doc. 45-3, p. 46)

On October 13, 2011, Osborne returned to the Health Care Unit because he was "non-verbal" (Doc. 45, p. 66). The nurse noted as follows:

Shakes head yes no [in] response to questions, skin WD intact, respiration non-labored, skin ND intact [No] visible distress noted. [Patient] education provided "Effects of Starvation."

Release to DOC to place in _____ side observation cell; [with] q 8/day, evening nite shift

(Doc. 45, p. 66) At this point, Osborne started a hunger strike.[4] He signed a receipt for the educational booklet: "The Effect of Starvation". (Doc. 45-1, p. 17) His intake of food and

---

[2] The Provider's Orders indicate that Motrin, 200mg, 4 tabs, twice a day for seven days were dispensed to Osborne on October 11, 2011. (Doc. 45-1, p. 21)

[3] The Provider's Orders indicate a request for an x-ray of the right knee but the x-ray report and other documentation indicate that the left knee was x-rayed. (Doc. 45-1, p. 21; Doc. 45-3, p. 46)

[4] In his second amended complaint, Osborne states that he went on a "hunger strike because of the mental and physical abuse he was going through because of this unnecessary attack". (Doc. 15-1, p. 6, ¶ 23)

water and his vital signs were monitored and documented from October 11, 2011 until October 15, 2011, when Osborne ate half of his lunch. (Doc. 45-1, p. 15-17) The Mental Health Watch notes show that he spent his time sleeping, being quiet, walking, or sitting and rejected his meals on two occasions. (Doc. 45, p. 43-45) On October 15, 2011, he was "released from hunger strike" (doc. 45-1, p. 16) and "released back to cell M-63". (Doc. 45, p. 43) He was also treated for a urinary tract infection and prescribed Cipro 500 mg on October 17, 2011 and Cipro and Pyridium 200mg on October 25, 2011 (Doc. 45-3, p. 13, 40).

On November 7, 2011, Osborne made a request for services as a follow-up for the examination on October 11, 2011. (Doc. 45-1, p. 63) The nurse noted that the x-rays taken on October 12, 2011 showed no fracture or dislocation. (Id.) The nurse also noted Osborne's current complaint of needing "Motrin for more than 7 days", his current rate of pain as "6/10", and his previous complaints of pain in his right hand, left knee and right hip. (Doc. 45-1, p. 64) On examination, the nurse found tenderness and pain with movement, assessed pain in Osborne's right hand, left knee, and right hip, and prescribed Ibuprofen. (Doc. 45-1, p. 64-65) The Medication Administration Records show that Osborne was dispensed Motrin 200mg 4 times per day for 7 days in October 2011, Motrin 800mg twice daily for 30 days in November 2011, and "Ibuprofen 800mg–Motrin" twice daily for 30 days in December 2011. (Doc. 45-3, p. 11-13)

On January 11, 2012, Osborne was transferred from Holman Correctional Facility to Donaldson Correctional Facility. (Doc. 45-1, p. 62) The nurse who completed the Intra-System Transfer-Receiving Screening examination indicated that Osborne had "no complaints", was in "no distress", and had no current prescriptions or treatments. (Doc. 45-1, p. 62) The medical

records do not indicate any prescription for Motrin or Ibuprofen after December 2011 (Doc. 45-3, p. 8-9, February and March 2012)

In order to establish an Eighth Amendment claim, Osborne must prove both an objective and subjective component.  He must show that the force applied by the defendants was objectively "harmful enough" to violate the Eighth Amendment's prohibition of cruel and unusual punishment and that defendants subjectively "act[ed] with a sufficiently culpable state of mind," or rather, acted "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7–8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  The objective component "necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

As to the subjective component, the Court adopts herein the Magistrate Judge's determination that Osborne has failed to submit sufficient evidence that the defendants acted maliciously or sadistically to cause Osborne harm.  Osborne admits that he did not follow the defendants' request that he voluntarily remove his boxers to allow the contraband search and that he argued with the defendants as to whether the search was necessary. (Doc. 15-1, ¶ 13, "I asked Sgt. J. Peavy to pat me down I have no contraband in my groin area or anus, he replied, 'we gone make you strip['], the Plaintiff replied, 'This is unnecessary, you all can't make me do nothing.'") Osborne also admits that his hand-cuffed hands came in contact with Officer Watson, stating that he "grabbed the defendant out of fear." (Doc. 15-1, ¶ 18)

As to the objective component, the medical evidence indicates that two days after the incident Osborne's right hand was swollen, had a scratch and he could close his hand halfway;

his left hand had a scratch; his left kneecap was swollen; his right hip was swollen; he limped on his right side; and he had an abrasion on his right big toe.  Osborne was treated with an immobilization bandage.  The medical staff prescribed Ibuprofen or Motrin in October, November, and December.  The x-rays of Osborne's hand, hip and knee did not show any fracture or dislocation.  On November 7, 2011, the nurse noted tenderness and pain in Osborne's right hand, right hip and left knee.  However, by early January 2012, when Osborne was transferred to Donaldson Correctional Facility, he no longer complained of orthopedic pain.  His hunger strike ended October 15, 2011 and there is no indication that he resumed the strike.

Viewing the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to Osborne, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), the Court finds that there is no genuine issue of material fact that Osborne's injuries were only de minimis and do not support an inference that the force applied by the defendants was objectively "harmful enough" to establish an Eighth Amendment violation for the use of excessive force. *Hudson*, 503 U.S. at 10; *Wilkins v. Gaddy,* 559 U.S. 34, 37-38, 130 S. Ct. 1175, 1178 (2010) ("'[T]he extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation.' . . . "The extent of injury may also provide some indication of the amount of force applied.") (citations omitted); *Custom Mfg. & Eng'g, Inc. v. Midway Services, Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) ("Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (citing *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1243 (11th Cir. 2001)).

Accordingly, for the reasons set forth herein, defendants are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Therefore, the motion for summary judgment as to defendants Dexter Brown, Michael Watson, Brian Davis, Benjamin Davis, and Jonathan Peavy is GRANTED.

**DONE** this 25th day of September 2013.

/s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE